### 23959. HALE *v.* THE STATE.

DECIDED NOVEMBER 5, 1934.

*H. M. Breed,* for plaintiff in error.

*L. L. Meadors, solicitor, Loeb C. Ketzky,* contra.

MacINTYRE, J. Monroe Hale was convicted on a charge of having, possessing, and controlling alcoholic and intoxicating liquors. The defendant's motion for a new trial was overruled and he excepted.

H. L. Allman, sworn for the State, testified in part: "On August 18th, 1933, when he and other officers, namely Avery, Hunt, and Wooten, found 15 gallons of corn whisky in several different caches back of the defendant's home, in one cache about 200 yards away from Hale's Home and across a ditch and broken wire fence the officers found 15 gallons, at another point, back of Hale's house, the officers found 3 gallons in glass jugs in a cache about 200 yards from the house, and to the back and side of the house they found 7 gallons. In addition to this quantity they found a cache of some 30 short pints and quarts of whisky about 200 yards, back of the defendant's house. On other raids the witness found empty bottles, cans, and jugs in the house referred to as Hale's Home, all of which were recently emptied of whisky. All of this

was within two years from the date of trial. Witness had never known Hale to do any manual labor or other work during the two years prior to the trial. There was a road, a side road, leading off from Whitesville road, to the right, to the house where Hale lived, this road being well traveled. Hale's house, or the house where Hale lived, sat some twenty yards off the main road on a bank to the right, leaving LaGrange. The side road showed signs of a great deal of automobile traffic. On one of the occasions just prior to this raid, witness and Grover Cole found one gallon hid near the well. At that time Monroe Hale, the defendant, tried to shoot officer Cole, and witness made Hale drop the shotgun and cut shells. On the 18th of August, 1933, when the 25 gallons of whisky were found, witness and the other officers tracked a man from Hale's house across the fields to where the whisky was hid. The man whose tracks were followed was barefoot, and there were also tracks of a man with shoes on. These tracks led from the house to the whisky. While the witness was there Monroe Hale came up the farm road. A negro man named James Dowell was with him. The negro had on shoes. Monroe Hale was barefooted. Hale was coming from back in the same general direction in which the whisky was found, and the tracks leading from the house to the whisky were not different from the tracks Hale was making in the road. The ground was wet and the tracks were clear. When asked what differences there were between the tracks witness saw Hale make and the tracks leading from the liquor, witness answered that there was none. He further testified that in his opinion Hale made the tracks, but did not absolutely know it—would not swear positively that they were defendant's tracks. He did not fit the feet of the defendant to the tracks.

On another occasion, about this time, witness, together with county officer R. B. Carter and F. D. Pressley, United States deputy marshal, found one gallon of whisky hid back of the toilet, about 300 yards from the house, on a terrace. The path led from Hale's house by the toilet on out into the field to the whisky. Also he found there were a dozen or more cans had been buried out near this whisky. Larry Avera, W. P. Hunt and C. W. Wooten gave substantially the same testimony as H. L. Allman. The evidence tended further to show that the premises in question were rented by Miss Ida Hale, sister of the defendant, and that the house was

occupied by the defendant, Miss Ida Hale, "Club" Hale, and Joe Dean Buchanan. Ida Hale and "Club" Hale both swore that they did not possess the whisky.

There was a tenant house about 75 yards from this home and a second tenant house about 250 yards from the defendant's home; all of the caches were closer to the defendant's than any other house except the cache containing the 30 pints. The house and premises rented by Miss Ida Hale consisted only of a house, a small front yard, and a garden place running back to a ditch and garden fence.

On another occasion, other officers found where whisky was poured out in the Hale house. At that time several drunk men were there, in and out of the house and yard of the Hale premises. One witness also testified, "as witness came up, Monroe Hale came out of the kitchen door, which was the room in which the whisky had been poured out, and Mr. Pressley arrested him; witness Carter went on in the room where the whisky had been poured out."

Snelson Davis, sworn as a witness for the defendant, on cross-examination "denied that he had ever purchased any liquor from the defendant or that the defendant had ever given him any liquor at any time during the two-year period prior to the accusation under which the defendant was being tried. However, this witness refused to answer the solicitor-general's questions, claiming that his answers would incriminate himself. He said he had been there with other parties who did not have whisky when they went to Monroe Hale's house, but that immediately after leaving the party had whisky. On another occasion the officers found whisky just across the road from the Hale house.

"The defendant, Monroe Hale, denied the accusation, denied that he had violated the prohibition law, denied any knowledge of the liquor allegedly found on the two occasions charged, stated that on the morning of August 18, 1933, he, the defendant, had been to an adjacent cotton mill to deliver wood, had just returned home and had just been over to the negro Dowell's sister-in-law's house to help mend a broken hog-pen, stated that he was returning from this house when the officers arrived, and denied that he had on that occasion or just prior thereto or at any time visited the points where the liquor was found. He had farmed on the Hogg place with his brother Oscar Hale who had made a crop of cotton of about 8 or 10 bales and some corn, hay, etc."

Under the accusation in this case, if the State proved that at any time within two years prior to the filing of the accusation the defendant possessed the prohibited liquors as charged, the jury were authorized to find a verdict of guilty. All of the occasions of the finding of whisky to which the testimony related were within two years prior to the filing of the accusation, and the defendant was always at home when the raids were made and the whisky was found.

It will be noted that the whisky was found on one occasion at the well (on the Hale premises), at which time the defendant attempted to shoot one of the officers making the raid, and on another occasion that drunken men were in and about the house, and upon the approach of the officers the defendant came from a room in the house where men were pouring out whisky, that defendant's own witness, on cross-examination, testified that he had been to the Hale house with other parties who did not have whisky when they went to Monroe Hale's house, but that immediately after leaving the party had whisky, that at other times large quantities of intoxicating liquors were found in the vicinity of the premises, although not actually on the premises, that on the 18th of May fresh barefoot tracks, just after a rain, which did not differ from the tracks the witness saw the defendant make, led to a quantity of liquor just across a broken wire fence and ditch immediately adjoining the defendant's premises, and on to other large quantities of concealed liquors, and back again to the defendant's house, and that on another occasion the officers found a path that led by the toilet to a terrace about 300 yards from the house, and that at this point they found a gallon of whisky hid, and they also found there where a dozen or more cans had been buried out near this whisky; and at still another time they found some whisky just across the road from the defendant's house. See, in this connection, *Henderson* v. *State*, 45 *Ga. App.* 236 (164 S. E. 70).

We can not escape the conclusion that the jury were authorized to find that the evidence excluded every reasonable hypothesis except that the defendant possessed the prohibited liquors as charged.

■ To the question asked of several witnesses, to the effect, "What work have you known the defendant Hale to do during the two-year period prior to the date of this accusation?" the defendant objected on the ground that such question was: (1) irrele-

vant, immaterial, and prejudicial, and (2) that such question "was putting the character, the general character, of the defendant, this plaintiff in error, in issue, which the State could not do, inasmuch as the defendant himself had not put his character, his general character, in evidence and in issue," and the objection was overruled. The witnesses replied in effect that they knew of none. If it was error to admit this testimony at first, the error was cured when the defendant, in his statement, said that he had "farmed on the Hogg place with his brother, Oscar Hale, who had made a crop of cotton of about 8 or 10 bales and some corn, hay, etc." *Mars* v. *State,* 163 *Ga.* 43 (11) (135 S. E. 410).

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*